Law Library

**IN THE SUPERIOR COURT OF GUAM**

| | |
|---|---|
| CHEN YU MACK, | CIVIL CASE NO. CV0651-11 |
| Plaintiff, | |
| vs. | **DECISION AND ORDER** |
| DONALD B. DAVIS, | |
| Defendant. | |

## INTRODUCTION

This matter came before the HONORABLE VERNON P. PEREZ on November 8, 2013 on Defendant's Motion to Compel Discovery Responses. Attorney Jehan'ad G. Martinez appeared on behalf of the Defendant. Attorney Daniel J. Berman appeared on behalf of the Plaintiff. Having reviewed the pleadings, the arguments presented and the record, the Court now issues the following Decision and Order.

## BACKGROUND

This case arises from a complaint for Injunctive Relief and Damages. Plaintiff alleges that Defendant granted her an irrevocable proxy. Plaintiff and Defendant came to an agreement in 2008 where they would put up their own money to form IHIAC, Inc. in addition to acquiring a joint loan from Bank of Guam ("BOG") also for that purpose. The intent was to purchase Zurich Insurance Guam, Inc. ("ZIG"). After forming IHIAC, both parties were issued 1,999 shares of IHIAC stock and 2 shares went to one Francis Santos as a tie breaker. The agreement came to fruition and IHIAC bought all of the stock of ZIG, after which ZIG's name was changed to Island Home Insurance ("IHIC"). After the company consolidation was completed, Plaintiff alleges that she invested $1,525,000.00 into IHIAC, transferred her Staywell Guam, Inc., stock worth approximately $3,000,000.00 to IHIAC, became jointly liable on a $9,415,000.00 loan from BOG and allowed her $1,960,000.00 valued real property to be used as security on the BOG loan.

Thereafter, Plaintiff alleges that Defendant promised Plaintiff a proxy of Defendant's shares to allow Narcissa Samonte ("Samonte") to become a 10% shareholder in IHIAC to calm Plaintiff's concerns over becoming a minority shareholder. Plaintiff also alleges that Defendant granted her a proxy of his shares via email. Plaintiff attempted to use the alleged proxy at a shareholders meeting on April 8, 2011 in order to pass a resolution that would grant her $10,000.00 a month and reduce Defendant's annual salary. Yet, when attempting to use the alleged proxy, Defendant revoked his proxy and Plaintiff's resolution failed.

On January 12, 2012, this Court issued a Preliminary Injunction ordering Defendant to desist from voting his share of his IHIAC stock until the resolution of this matter at trial. The Guam Supreme Court subsequently affirmed the Court's decision. There were, however, pending issues regarding discovery. Defendant brought a Motion to Compel Discovery responses and Plaintiff opposed. The Court now addresses that motion.

## DISCUSSION

At issue is whether the Court should compel production of Plaintiff's tax returns and other documents relative to Plaintiff's financial condition. The Supreme Court of Guam in *Haeuser v. Dept. of Law, Gov't of Guam* explained that "[t]he United States Supreme Court and the Ninth Circuit have recognized that tax returns are privileged documents, but do not enjoy an absolute privilege from discovery." *Haeuser v. Dept. of Law, Gov't. of Guam*, 1999 Guam 12 ¶ 23. (citing *St. Regis Paper Co. v. United States*, 368 U.S. 208, 219; *Premium Service Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225, 229 (9th Cir. 1975). Furthermore, "[a] public policy exists against unnecessary disclosure in order to encourage taxpayers to file complete and accurate returns." *Id.* (citing *Premium Service Corp.*, 511 F.2d at 229).

The Supreme Court in *Haeuser* adopted a rule to determine whether tax returns should be disclosed in discovery. "[A] court must determine whether: 1) the tax return is relevant to the subject matter in dispute; and 2) a compelling need exists for the return because the information

sought is not obtainable from other sources." *Id.* (citing *Terwilliger v. York Int'l Corporation*, 176 F.R.D. 214, 216-217 (W.D. Va. 1997). "The party seeking discovery of tax returns bears the burden of establishing its relevance, while the resisting party has the task of identifying an alternative source for information." *Id.*

The trial court in the underlying case in *Haeuser* ruled against production of tax returns, finding that there were other sources from which to draw the information from those documents. The Supreme Court affirmed the trial court's decision, ruling that the "government present[ed] only general assertions of relevance and [did] not offer any other arguments to justify reversing the trial judge's determination that these documents were not needed." *Haeuser* at ¶ 28.

In the present case, Defendant argues that establishing the truthfulness of Plaintiff, and her financial claims, necessitates the requests for production. Def's. Mot. pg. 5. Defendant further argues that there are no public sources of the information being sought as Plaintiff is not a publicly traded company, or a public employee whose financial condition is subject to reporting requirements and public scrutiny. Def's Mot. pg. 5. On that basis, Defendant concludes that Plaintiff should be ordered to produce the documents requested.

Plaintiff first argues that her financial information is not relevant to any issue in this litigation. She further argues that the legal issue at hand is not whether she needs the money but instead whether she is legally entitled to it. Plaintiff cites to 6 Moore's Federal Practice § 26.1(8)(a)-(b), which states in relevant part: "[c]ourts continue to apply the general principle that a party's financial information is relevant for purposes of discovery if it implicates specific elements of a claim or defense. Plaintiff also cites to case law for the notion that disclosure of tax returns is especially disfavored. *U.S. v. Bonnano Organized Crime family of La Costra Nostra*, 119 F.R.D. 625, 627 (E.D.N.Y 1998).

The Court is tasked with balancing the discovery needs of a party against the public policy favoring non-disclosure. In the *Bonnano* case cited by Defendant, the Court set aside an order precluding the production of tax returns and held that the tax returns were "clearly relevant" because of the Government's contentions that the party, from whom the tax returns were sought, did not have adequate income to make purchases and operate as he did. *Bonnano* at 628. In *Smith v. Bader*, the court noted that along with the test of relevance and whether there was a compelling need for the information, some courts also considered whether the taxpayer has made an issue of his income. *Smith v. Bader*, 84 F.R.D. 437, 438 (1979). In that case the Court ordered the production of the plaintiff's tax returns, holding that "[p]laintiffs have placed their income in issue by claiming that they have suffered a loss due to defendants' actions and it would be inequitable to prevent the defendants from obtaining the necessary evidence to disprove this claim." In *Mitsui & Co., v. Puerto Rico Water Resources Authority*, the court also ordered the plaintiffs therein to produce their income tax returns. *Mitsui & Co. Inc. v. Puerto Rico Water Resources Authority*, 79 F.R.D. 72, 81 (1978). In that case, the plaintiff claimed over thirty million dollars for losses and damages due to defendants' alleged non-compliance with their obligations under the contract. The Court ultimately held that the plaintiff "clearly put at stake its income . . . so as to waive any right it may have to maintain undisclosed its tax returns' matters." *Id.*

Here, we have a similar situation. Plaintiff alleges: Because of [Defendant's] breach of the irrevocable Mack Proxy, [Plaintiff] has suffered general, consequential, and compensatory damages, including, but not limited to, damages for lost profits, attorney's fees and expenses, pre-judgment interest, future and loss bargain damages in an amount to be proven at trial. Pl's Compl. ¶ 52.

Further, in its April 22, 2011 letter to Defendant, Plaintiff wrote: "I have become unable to pay my debts monthly as they become due without the $10,000 monthly compensation you promised me in exchange for my investment and contribution in the companies. I will need to admit to BOG shortly that I am unable to pay all my debts as they come due." See Decl. of Jehan'ad Martinez, Decl. ¶ 3; Ex. 1. The Court notes that Defendant is a co-borrower on the BOG debt referenced by Plaintiff.

The Court deems the above two references sufficient for a finding that Plaintiff's income has been placed at issue. As such, the Court believes that production of tax returns and financial documents is relevant to the subject matter in dispute. Furthermore, Plaintiff has not identified an alternative source for the information sought. On that basis, the Court will grant Defendant's Motion to Compel Production of Discovery Responses, as outlined in the parties' Amended CVR 37.1(b) Stipulation filed on December 30, 2011. The Court, however, heeds the traditional privacy concerns relative to these documents, and orders that the parties sign a confidentiality stipulation prohibiting the disclosure of documents produced to anyone other than counsel.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Compel Discovery Responses.

So ORDERED this 11th day of February, 2014.

HONORABLE VERNON P. PEREZ
JUDGE, SUPERIOR COURT OF GUAM

I do hereby certify that the foregoing is a full true and correct copy of the original on file in the office of the clerk of the Superior Court of Guam. Dated at Hagåtña, Guam

FEB 11 2014

Therese M. Blas
Deputy Clerk, Superior Court of Guam